IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

KIMBERLY WALLACE,

      Plaintiff,

     v.

PUBLIX SUPER MARKETS, INC.,

      Defendant.

CIVIL ACTION NO.: 4:20-cv-00305

**O R D E R**

This slip-and-fall case is before the Court on Defendant Publix Super Markets, Inc.'s ("Defendant" or "Publix") Motion for Summary Judgment. (Doc. 43.) Plaintiff Kimberly Wallace ("Plaintiff") initially filed this action in state court after she slipped and fell while shopping at a Publix store in Chatham County, Georgia. (Doc. 1-1.) Publix removed the case to this Court, (doc. 1), and, following the close of discovery, filed a Motion for Summary Judgment, (doc. 43). Plaintiff was required to file a response in opposition to the Motion by March 22, 2022, but failed to do so. To date, Plaintiff has not filed a response to the motion. For the reasons explained more fully below, the Court **GRANTS** Defendant's Motion for summary Judgment. (Id.)

**BACKGROUND**

**I.    The Incident**

According to the Complaint, on November 24, 2018, Plaintiff Kimberly Wallace slipped and fell while shopping at the Publix store located at 11701 Abercorn Street in Savannah, Chatham County, Georgia (the "Store") and thereby sustained "severe personal injuries." (Doc. 1-1, p. 2.) Plaintiff alleges that she fell while shopping on a frozen foods aisle, which she believes to have

been Aisle 7 of the Store,[1] (see doc. 43, pp. 6–7), sometime between 7:10:13 p.m. and 7:12:05 p.m., (see generally doc. 47).[2]  According to Plaintiff, she fell because a "watery" substance was present on the floor of Aisle 7, (doc. 1-1, p. 2; see doc. 43 p. 9), although she testified that she did not remember seeing what she slipped in prior to the fall, (doc. 43, pp. 8–9).  Plaintiff also does not remember inspecting the area, following the fall, to identify what caused her to slip, (see doc. 43, p. 9); instead, she continued shopping on the next aisle, (see doc. 47 at 19:12:05 (depicting Plaintiff entering Aisle 8 and continuing to shop)).  Around six or seven minutes after Plaintiff's fall, she approached a Publix cashier to pay for her items, at which point she informed the cashier that she had fallen.  (See doc. 43, p. 9; doc. 45, p. 6 (Publix's Statement of Material Facts); see also doc. 47 (security camera footage) at 19:16:55–19:19:24.)

In the approximately seventeen minutes prior to Plaintiff's fall—between 6:53 p.m. and 7:10 p.m.—at least ten other customers traversed Aisle 7.  (See doc. 45, pp. 1–5; see also doc. 47.)  According to Alex Smith ("Smith"), Publix's store manager at the time, no other customers reported seeing any water or hazardous substances on the floor.  (Doc. 43, p. 18.)  Additionally, video footage shows that Smith walked down Aisle 7 and visually inspected the floor at 7:08:34 p.m., less than two minutes before Plaintiff entered Aisle 7.  (See doc. 47; doc. 43, p. 17.)  At the

---

[1]  During her deposition, Plaintiff stated that she believed she fell in Aisle 7, but that it could have been Aisle 8. (Doc. 43, pp. 6–7.)  The video evidence submitted by Defendant, however, indicates that Plaintiff did not fall in Aisle 8, as the security camera ("CCTV") footage of that aisle is unobstructed yet there is no footage of Plaintiff falling in that aisle during the relevant time period.  (See generally doc. 47.)  On the other hand, while there is also no footage of Plaintiff falling in Aisle 7, the CCTV view of that aisle *was* obstructed, so it is conceivable that Plaintiff fell on that aisle, but the incident was not captured on the CCTV footage.  (See id.)

[2]  The Store maintains an internal CCTV video surveillance system which was in operation at the time of the fall.  (See doc. 47 (Defendant's notice of manual filing of a thumb drive containing CCTV video footage of the Store on November 24, 2018).)  The cameras were set up at various locations throughout the store and contain information specific to the store, numbers to identify the precise camera in the store, and time stamps.  (See doc. 44, pp. 2–8; doc. 43, p. 15.)

time of his inspection of Aisle 7, Smith found the floor to be free of any hazards.  (See doc. 43, pp. 17–18.)

## II.     Publix's Inspection Procedures

Publix has provided evidence, through the testimony of Smith and former customer service manager Taylor McCandless, detailing Publix's various policies and procedures for inspecting the Store for hazardous conditions.  (See generally id. at pp. 11–14; id. at pp. 23–25.)  According to Smith, Publix trains all employees to "continuously scan and check the floors of the store whenever they are walking through any part of the store and to keep the floors clear."  (Id. at p. 12; see also id. at p. 23.)  All store employees must also abide by Publix's "TIP" or "Towels In Pocket" program that requires employees to carry "[three] or [four] folded paper towels" on their person at all times so that they can immediately address any spills they observe while walking through the store.  (See id. at pp. 12, 24.)  The policy also calls for employees to remain at the site of any spill they may encounter that is too large to clean up by themselves, and to call for assistance to ensure that no patrons encounter the spill before it is cleaned up.  (See id. at pp. 12–13, 25.)

Smith and McCandless further testified that Publix requires "a complete safety sweep" to be conducted "usually every hour or at least six times a day."  (Id. at pp. 13, 24.)  This process involves an employee sweeping the entirety of the store with a push broom in order to locate and address any potential spills or hazards, with the entire sweep taking around twenty to twenty-five minutes.  (Id.)  Publix employed yet another routine safety procedure entitled the "Check 50" program, in which an announcement was made over the store's P.A. system "approximately every [thirty] minutes to an hour" that required all store employees "to immediately scan the floors in their area and confirm they [were] clean and clear of any hazard."  (See id. at pp. 13, 24–25.) Publix does not maintain records of routine inspections or safety sweeps occurring, and, according

to Smith, employees merely implement the policies "as a matter of routine and habit in day-to-day store operations." (Id. at p. 18.)

As the store manager at the time of Plaintiff's fall, Smith testified that all the aforementioned policies were in place and would have been carried out at the Store on November 24, 2018. (Id. at pp. 14, 18–19.) Moreover, Smith testified that all employees were aware of the existence of these policies, and that he conducted "safety huddles" regularly—"at least several times a week"—to remind employees of Publix's "policies to keep the floors clear of any spills or substances that should not be there." (Id. at p. 12.)

### III.   Procedural History

Plaintiff filed this action on October 26, 2020, in Chatham County State Court. (Doc. 1-1.) Plaintiff asserts a claim of negligence on the part of Publix, which she claims resulted in her fall and resulting injuries, and she also claims she is entitled to punitive damages. (Id.) Publix removed the action to this Court, (doc. 1), and, following the close of discovery, filed this Motion for Summary Judgment, (doc. 43), as well as a Statement of Material Facts as required by S.D. Ga. Local Rule 56.1, (doc. 45). Plaintiff's response was due by March 22, 2022. (Doc. 46; see S.D. Ga. L.R. 7.5.) Plaintiff did not respond to the Motion and, to date, has not made any filings regarding the Motion for Summary Judgment.

## LEGAL STANDARD

### I.   Standard Governing Motions for Summary Judgment

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law.'" FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party would have the burden of proof at trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove her case at trial.  See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).  If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)).  However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact." Id. (citation and emphasis omitted). Additionally, the Court is not permitted to make credibility determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence. Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

**II.    Summary Judgment Standard When Motion is Unopposed**

Southern District of Georgia Local Rule 7.5 ("L.R. 7.5") requires a party opposing a motion for summary judgment to respond within twenty-one days after service of the motion. S.D. Ga. L.R. 7.5. "Failure to respond within the applicable time period shall indicate that there is no opposition to a motion." Id. Publix filed its Motion for Summary Judgment on March 1, 2022. (See doc. 43.) Plaintiff, to date, has filed no response. Accordingly, pursuant to L.R. 7.5, Defendant's Motion is deemed unopposed.

However, the Court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed" and instead "must consider the merits of the motion." See Gandy v. Gramiak, No. 5:16-cv-44, 2019 WL 1085189, at *1 (S.D. Ga. Mar. 7, 2019), *report and recommendation adopted*, No. 5:16-cv-44, 2019 WL 1368636 (S.D. Ga. Mar. 26, 2019) (quoting United States v. One Piece of Real Property Located at 5800 SW 74th Ave., 363 F.3d 1099, 1101 (11th Cir. 2004) (hereinafter, "One Piece")). "[T]he movant is not absolve[d] . . . of the burden of showing that it is entitled to judgment as a matter of law" simply because a motion goes unopposed. Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008). Indeed, even when a motion is unopposed, the moving party retains its burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotations omitted).

While "[t]he district court need not *sua sponte* review all of the evidentiary materials on

file at the time the motion is granted," it "must ensure that the motion itself is supported by

evidentiary materials." One Piece, 363 F.3d at 1101.  Thus, while statements of material fact

included in the unopposed motion are deemed admitted, the district court still must review the

movant's citations to the record to determine if there is, indeed, no genuine issue of material fact.

See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009); see also S.D. Ga. L.R. 56.1

("All material facts set forth in the statement required to be served by the moving party will be

deemed to be admitted unless controverted by a statement served by the opposing party.").

Consequently, the fact that Plaintiff failed to respond to the Motion does not discharge

Publix of its burden to show that there is no genuine issue of material fact.  Instead, this Court will

accept the facts set forth in Publix's Statement of Material Facts as uncontroverted, but will

confirm they are supported by the cited record evidence and will determine whether Publix has

shown there is no genuine issue of material fact.

## DISCUSSION

### I.      Negligence

Publix argues, *inter alia*, that it is entitled to summary judgment on Plaintiff's negligence

claim because there is no evidence that it had knowledge of any water or other hazard that caused

Plaintiff to fall.[3]

---

[3] In addition to contending that it had no knowledge of any hazard, Publix seems to deny the existence of a hazardous condition altogether. (See doc. 44, p. 7, n.2.)  In support, Publix cites the testimony of Smith— who was the last person on Aisle 7 before Plaintiff, (see doc. 47 (showing that no one else entered Aisle 7 after Smith and before Plaintiff); doc. 45, pp. 4–5), and who inspected Aisle 7 less than two minutes before Plaintiff fell, (doc. 45, pp. 4–5; doc. 43, pp. 17–18)—to show that the aisle was free of spills.  Additionally, Publix offered the CCTV footage in an attempt to rebut Plaintiff's contention that her clothes were "clingy and wet" after she fall.  (See Doc. 44, p. 7, n.2; doc. 43, pp. 8–9.)  Despite briefly mentioning these factual arguments, however, Publix's brief stops short of outright contending that the undisputed evidence establishes that no hazard existed and focuses instead on whether Publix had knowledge of the hazard.

Under Georgia law, the owner or occupier of real property owes a duty to its invitees to exercise ordinary care in maintaining safe premises. O.C.G.A. § 51-3-1. "This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge [] and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises." Robinson v. Kroger Co., 493 S.E.2d 403, 408–09 (Ga. 1997).

However, in Georgia, "proof of a fall, without more, does not give rise to liability on the part of a proprietor." All Am. Quality Foods, Inc. v. Smith, 797 S.E.2d 259, 261 (Ga. Ct. App. 2017). A property owner is "not an insurer of the invitee's safety," but, rather, is "required to exercise ordinary care to protect the invitee from unreasonable risks of harm of which the owner/occupier has superior knowledge." Robinson, 493 S.E.2d at 408; see also Alterman Foods, Inc. v. Ligon, 272 S.E.2d 327, 329 (Ga. 1980) ("[A] proprietor is under no duty to continuously patrol the premises in absence of facts showing that the premises are unusually dangerous."). Indeed, "[t]he true basis for an owner's liability is [its] superior knowledge of the existence of a condition that could subject [its] invitees to an unreasonable risk of injury." Garrett v. Hanes, 616 S.E.2d 202, 204 (Ga. Ct. App. 2005). Thus, "[t]o support a premises liability claim, a plaintiff must show that the proprietor had superior knowledge . . . of the hazard," which a plaintiff can establish by showing that the proprietor had either actual or constructive knowledge of the hazard. Hartman v. Clark, 801 S.E.2d 66, 67 (Ga. Ct. App. 2017) (citing Smith, 797 S.E.2d at 261).

---

Moreover, because the Court finds that Publix is entitled to summary judgment on the knowledge element, the Court need not determine whether the undisputed facts establish that no hazard existed.

Accordingly, for Publix to prevail on its motion for summary judgment, it must show that it lacked both actual and constructive knowledge of the hazard that caused Plaintiff's fall.  See Drew v. Istar Fin., Inc., 661 S.E.2d 686, 689 (Ga. Ct. App. 2008).  Plaintiff has not identified, nor does the record reflect, any evidence that would support a finding that Publix had actual knowledge of a hazardous condition.  Therefore, this case depends on whether a reasonable factfinder could conclude that Publix had constructive knowledge of the hazard.

A plaintiff may demonstrate a proprietor's constructive knowledge of a hazard by showing that "(1) a store employee was in the immediate area of the hazard and could have easily seen the substance or (2) the foreign substance remained long enough that ordinary diligence by the store employees should have discovered it."  Johnson v. All Am. Quality Foods, Inc., 798 S.E.2d 274, 277 (Ga. Ct. App. 2017).  Plaintiff does not argue nor does the record reflect that any Publix employee was in the immediate area of the alleged hazard at the time of Plaintiff's fall.  (See doc. 47 at 19:10:13 (showing Plaintiff was alone on Aisle 7).)  Indeed, the only evidence submitted concerning an employee being in the area of the fall shows that the manager on duty inspected Aisle 7 roughly two minutes before Plaintiff's fall and found no hazard.  (See doc. 45, pp. 4–5; doc. 43, p. 17; doc. 47 at 19:08:34.)  Instead, looking to the Complaint (in the absence of any response to the Motion for Summary Judgment), Plaintiff apparently relies only on the second prong, that the foreign substance was on the floor long enough that ordinary diligence by Publix employees should have discovered it.  Johnson, 798 S.E.2d at 277; (see doc. 1-1, pp. 3–4.)

A.      **The Alleged Hazard was not in Place for Long Enough that Publix Should have Discovered it.**

Publix insists that the evidence establishes that "the alleged hazardous substance was not on the floor for any appreciable period of time," and it is therefore "insufficient to establish constructive knowledge." (Doc. 44, p. 17.)  The Court agrees.  For a proprietor to be liable under this theory of constructive knowledge, the hazardous condition must have been in place "on the premises for a sufficient period of time such that [the proprietor] should have discovered and removed the hazard."  Smith, 797 S.E.2d at 262.  "[W]here a proprietor has shown that an inspection occurred within a brief period prior to an invitee's fall, Georgia courts have held that the inspection procedure was adequate as a matter of law."  Harris, 2020 WL 5223304, at *3 (internal quotations omitted) (citing Brown v. Host/Taco Joint Venture, 699 S.E.2d 439, 443 (Ga. Ct. App. 2010)); see also Mucyo v. Publix Super Markets, Inc., 688 S.E.2d 372, 375 (Ga Ct. App. 2009).

In All American Quality Foods, Inc. v. Smith, the Georgia Court of Appeals considered a slip and fall case where the defendant submitted evidence that the substance in question had only been on the ground for six to seven minutes.  797 S.E.2d at 261.  The court declined to inquire further about the sufficiency of the defendant store's inspection policy and instead held "as a matter of law" that the limited time was insufficient to establish defendant's liability.  Id. at 262.  Similarly, in Hartman v. Clark, 801 S.E.2d 66 (Ga. Ct. App. 2017), the Georgia Court of Appeals reiterated the same standard, finding that the five-to-ten-minute period in which the liquid appeared on the ground was insufficient to raise an inquiry into the proprietor's inspection policies.  Id. at 67–68; see also Pirkle v. QuikTrip Corp., 754 S.E.2d 387, 391 (Ga. Ct. App. 2014) (granting summary judgment to QuikTrip where only eight minutes transpired between the inspection of the aisle in question and the fall); Carter v. Wal-Mart Stores East, LP, No. 1:19-cv-03907-WMR, 2021 WL 6622378, at *5 (N.D. Ga. Dec. 16, 2021) (finding the "limited period" of twelve minutes that

10

the liquid was on the floor "insufficient as a matter of law" to find constructive knowledge) (citing Smith, 797 S.E.2d at 262).  Indeed, Georgia courts have defined "brief" to include lengths of time as great as fifteen to twenty minutes.  See Wallace v. Wal-Mart Stores, Inc., 612 S.E.2d 528, 531 n.7 (surveying Georgia cases where proprietor inspected premises within 15 to 20 minutes of the fall); see, e.g., Johnson v. Autozone, Inc., 465 S.E.2d 463, 467 (Ga. Ct. App. 1995) (affirming summary judgment for proprietor because the "spill had existed for no more than 15 to 20 minutes prior to [plaintiff's] fall").

Here, the uncontroverted evidence reveals that the store manager, Smith, walked Aisle 7 at 7:08:34 p.m. and performed a visual inspection in which he "did not see any water or any other substance on any areas of the floor." (Doc. 43, p. 17; doc. 47.)  Plaintiff entered Aisle 7 at 7:10:13 p.m., less than two minutes after Smith's inspection, and remained on Aisle 7 for one to two minutes, during which she fell.  (See doc. 45, pp. 4–5; doc. 47 at 19:10:13–19:12:05.)  Plaintiff has not raised, nor can this Court locate, any Georgia case law assigning liability when the period between an inspection and a fall is only two or three minutes.  Plaintiff has likewise not identified any evidence indicating that Smith's inspection of Aisle 7 was deficient.  Seemingly, the *only* evidence that Plaintiff can raise is the fall itself, which is insufficient to withstand a motion for summary judgment.  See Smith, 797 S.E.2d at 261 ("[P]roof of a fall, without more, does not give rise to liability on the part of a proprietor.").  Absent evidence to the contrary, this Court finds that the time period between the inspection performed by Smith and Plaintiff's fall was so brief as to preclude a finding of constructive knowledge based on the length of time the hazard was on the floor.

B.       **Publix Maintained Reasonable Inspection Procedures**

To the extent Plaintiff argues or would seek to argue that deficiencies existed in Publix's inspection procedure that led to a failure to discover the hazard, (see doc. 1-1, pp. 3–4), the undisputed evidence reveals no support for this theory.  A proprietor, on summary judgment, may prove a lack of constructive knowledge by "demonstrat[ing] not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident," Harris v. Wal-Mart Stores E. LP, No. 5:19-cv-144-TES, 2020 WL 5223304, at *3 (M.D. Ga. Sept. 1, 2020) (quoting Shepard, 527 S.E.2d at 38).

Here, Publix has submitted evidence that extensive inspection procedures were in place at the time of the incident, including the "TIP" program, the "Check 50" announcement procedures, and routine safety sweeps of the store.  (See doc. 45, pp. 6–9; doc. 43, pp. 11–14, 23–25.)  Together, these programs worked to ensure that visual safety checks were happening with regularity within the store and, thus, constitute a reasonable inspection policy.  See Brown v. Wal-Mart Stores E., LP, 1:16-cv-111-WSD, 2017 WL 386647, at *5 (N.D. Ga. Jan. 27, 2017) (holding Wal-Mart's similar policy that required employees to conduct constant visual scans of their work areas and to carry towels on their person was a reasonable inspection procedure).

Additionally, Publix has submitted evidence, unchallenged by Plaintiff, that those procedures were actually carried out at the time of the incident, including the testimony of Smith that he inspected Aisle 7 just before Plaintiff's fall, (doc. 43, p. 17), and testimony from Smith and McCandless that the inspection policies were in place and were being carried out, (doc. 43, pp. 11–14; id. at pp. 23–25).  Publix has corroborated this testimony with video footage that shows Smith inspecting Aisle 7, (see doc. 45, pp. 4–5; doc. 47 at 19:08:34), and employees generally performing the various inspections throughout the day, (see generally doc. 47 (showing Store employees walking around and surveying the store at various points); doc. 45, pp. 4, 6).  While

Publix did not maintain written documentation confirming that its inspection policies were carried out, the uncontested evidence submitted is sufficient to show that the inspection policies were generally implemented on the day of the incident.

In light of the foregoing, the record contains no evidence that Defendant had superior knowledge of any hazard present on Aisle 7.  Accordingly, Plaintiff cannot satisfy at least one essential element of her negligence claim.  Therefore, Publix is entitled to summary judgment on the claim.

## II.     Punitive Damages

Plaintiff additionally makes a claim for punitive damages.  (Doc. 1-1, p. 6.)  Under Georgia law, a claim for punitive damages is effective only if there is a valid claim for actual damages to which it could attach; punitive damages may not be recovered if there is no entitlement to compensatory damages.   O.C.G.A.  §  51-12-5.1(b).  See  J. Kinson Cook of Ga., Inc. v. Heery/Mitchell, 644 S.E.2d 440, 449 (Ga. Ct. App. 2007).  In other words, where "the underlying tort claim fails," a plaintiff "cannot recover punitive damages."  Lewis v. Meredith Corp., 667 S.E.2d 716, 719 (Ga. Ct. App. 2008); Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1304 (11th Cir. 2009) ("A punitive damages claim is derivative of a plaintiff's tort claim, and where a court has dismissed a plaintiff's underlying tort claim, dismissal of a plaintiff's punitive damages claim is also required.").  For the reasons mentioned above, Plaintiff does not have a viable claim of negligence against Defendant.  Without any remaining underlying claim, Plaintiff is not entitled to punitive damages.  Accordingly, the Court **DISMISSES** Plaintiff's punitive damages claim.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Publix Super Markets, Inc.'s Motion for Summary Judgment.  (Doc. 43.)  The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant and to **CLOSE** this case.

**SO ORDERED** this 25th day of October, 2022.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA