IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

KIMBERLY WALLACE,

    Plaintiff,

v.

PUBLIX SUPER MARKETS, INC.,

    Defendant.

CIVIL ACTION NO.: 4:20-cv-00305

**O R D E R**

This matter is before the Court on Plaintiff Kimberly Wallace's Motion to Enforce Settlement. (Doc. 55.) Plaintiff filed this motion on April 1, 2022, seeking to enforce an alleged settlement agreement against Defendant Publix Super Markets, Inc. ("Publix"). (Id.) This matter has been fully briefed by the parties. (See id.; docs. 58, 60.) For the reasons more fully explained below, the Court finds that Plaintiff's arguments that she validly accepted Defendant's settlement offer nearly two years after it was extended strain credulity. Indeed, it appears Plaintiff's Motion is a disingenuous attempt to avoid Defendant's Motion for Summary Judgment, to which Plaintiff has failed to respond. Accordingly, the Court **DENIES** Plaintiff's Motion to Enforce Settlement.[1] (Doc. 55.)

BACKGROUND

**I.    Factual Background and Settlement Negotiations**

---

[1] Before filing her Motion to Enforce Settlement, Plaintiff originally filed a Notice of Settlement with the Court. (Doc. 48.) Defendant promptly filed a Motion to Strike. (Doc. 49.) Plaintiff thereafter filed a Motion to Withdraw, (doc. 52), and subsequently filed the at-issue Motion to Enforce Settlement, (doc. 55). The Court **GRANTS** Plaintiff's Motion to Withdraw Notice of Settlement, (doc. 52), and thereby **DISMISSES AS MOOT** Defendant's Motion to Strike Plaintiff's Notice of Settlement, (doc. 49).

Plaintiff alleges that on November 24, 2018, she slipped and fell at the Publix grocery store located at 11701 Abercorn Street in Savannah, Georgia, which is owned and operated by Defendant. (See generally doc. 1-1.) On September 6, 2019, prior to filing this lawsuit, Plaintiff served a written settlement demand on Defendant entitled "Notice of Imminent Litigation," for the amount of $850,000.00, asserting that she had incurred $266,494.02 in medical expenses. (Doc. 55, p. 3; doc. 58, p. 2; see doc. 58-1, pp. 3, 6–8.) On November 7, 2019, Defendant's representative, April Haynes, acting on Defendant's behalf, responded to Plaintiff's demand letter with a counter-offer in the amount of $50,000.00. (Doc. 55, p. 3; doc. 58, p. 2; see doc. 58-1, pp. 3, 10.) The parties discussed settlement again in December 2019, but no agreement was reached.

On May 1, 2020, Haynes sent Plaintiff an email containing a settlement offer in the amount of $75,000.00. (Doc. 55, p. 3; see doc. 55-1.) The offer read as follows:

> Please forward your client our final offer of **$75,000.** This offer is made with ALL the following conditions: All offers extended by Publix are made with the condition that prior to the issuance of the settlement check, your client (and their spouse if applicable) agrees to sign and return the Publix approved settlement document which contains an indemnification and hold harmless agreement, as well as a confidentiality clause. The document will also need to be notarized. We will also need both a CMS Affidavit and Medicare Advantage Plan Affidavit completed to assist us in determining which Medicare Advantage Plans are applicable to your client's case. The aforementioned settlement document will be sent to you for your client's completion after we receive the properly completed CMS Affidavit and Medicare Advantage Plan Affidavit along with their marital status and spouses [sic] name (if applicable). **I have attached those documents to this email, PLEASE HAVE THEM PROACTIVELY COMPLETED.**

(Doc. 55-1 (emphases in original).) Plaintiff did not complete the attached documents or otherwise respond to the email. (See doc. 58-1, p. 3.) Haynes thereafter reiterated Publix's "final offer" of $75,000 in another email dated July 23, 2020. (Id. at p. 18.) Plaintiff again neglected to respond to this offer or acknowledge it in any way. (See id. at p. 3.) The next communication Defendant received from Plaintiff was a certified letter from Plaintiff's counsel, dated October 27, 2020, notifying Defendant that Plaintiff had filed suit. (Id. at p. 20.) Upon receipt of this letter, according

2

to Haynes, Defendant considered its settlement offer rejected. (Id. at p. 4; doc. 58, p. 9.) There is no record that Defendant thereafter made any settlement offers or that further settlement negotiations or discussions occurred.

Plaintiff filed this lawsuit on October 26, 2020, in the State Court of Chatham County, (doc. 1-1), and Defendant thereafter removed the case to this Court, (doc. 1). On February 14, 2022, following the close of the discovery period, the parties jointly filed a status report ("Status Report"), using a form required by the Court. (Doc. 38.) In the Status Report, under the heading "Settlement," the parties checked the box for "Yes" in response to a question regarding whether they had "made efforts to resolve this case." (Id. at p. 2.) Following the prompt for them to "explain those efforts," the parties stated that they "ha[d] conducted pre-suit negotiations only," and that "[t]he current status of offers is $500,000.00 from the Plaintiff and $75,000.00 from the Defendant." (Id.) The Status Report further indicated that the parties were not "prepared to discuss settlement of th[e] case with the Court at th[at] time" as Defendant would "be filing a motion for summary judgment as to all of Plaintiff's claims and wishes to have the motion ruled upon before discussing settlement." (Id.) Additionally, at the end of the "Settlement" section, when prompted to propose dates for a status conference at which, the parties were advised, the Court "may require that each party have a representative with full settlement authority present," Defendant reiterated that it "wishe[d] to have its motion for summary judgment ruled upon before addressing settlement of the case" and expressed its desire to not be required to send a representative with "full settlement authority" to the conference. (Id. at p. 3.)

## II.     Procedural History and Correspondence

On March 1, 2022, Defendant filed a Motion for Summary Judgment, giving Plaintiff twenty-one days (or until March 22, 2022) to file a response. (Doc. 43; see also doc. 46.) On

March 21, 2022, Plaintiff's counsel contacted defense counsel about a possible extension for filing a response to the motion, to which defense counsel responded that any request for extension would need to be filed with the Court. (See doc. 49, pp. 6–7.)

After inquiring about an extension, however, Plaintiff's counsel sent defense counsel another email later that day stating, "After much consideration, my client has decided to accept the offer of $75,000 to settle her claims. Please make the check payable to Kimberly Wallace and The Eichholz Law Firm, P.C." (Id. at p. 10.) Defense counsel responded, relaying his position that "there is no settlement offer . . . currently extended from Publix in this case," and he noted that, "[i]n the Status Report . . . Publix stated it was not interested in settlement until the Court had ruled on Publix'[s] motion for summary judgment." (Id. at p. 9.)

Nevertheless, on March 22, 2022, Plaintiff—rather than moving for an extension of time to respond to Defendant's Motion for Summary Judgment—filed a Notice of Settlement with the Court, "announc[ing] that she ha[d] accepted an offer from the Defendant to resolve her claims." (Doc. 48.) The following day, Defendant filed an objection and a motion to strike the Notice of Settlement on the grounds that "[t]he filing of th[e] notice was done unilaterally by Plaintiff and without the knowledge or consent of Publix." (Doc. 49, p. 1.) Subsequently, "[a]fter discussion by and between counsel for the parties," (doc. 58, p. 5), Plaintiff agreed to withdraw the Notice of Settlement, (doc. 52). On April 1, 2022, Plaintiff filed the at-issue Motion to Enforce Settlement. (Doc. 55.) Defendant filed a Response, (doc. 58), and Plaintiff filed a Reply, (doc. 60). Plaintiff never requested an extension for filing—nor did she ever attempt to file—a response to Defendant's Motion for Summary Judgment, which remains pending.

## STANDARD OF REVIEW

The Court uses the applicable state's contract law to construe and enforce settlement agreements. Vinnett v. Gen. Elec. Co., 271 F. App'x 908, 912 (11th Cir. 2008). Here, there is no dispute by either party that Georgia law controls in this case.[2] (See doc. 55, p. 4; doc. 58, p. 5.) "Under Georgia law, a motion to enforce a settlement agreement is evaluated under the standards similar to a motion for summary judgment," Cohen v. DeKalb Cnty. Sch. Dist., No. 1:09-CV-1153-WSD, 2009 WL 4261161, at *4 (N.D. Ga. Nov. 25, 2009) (citing Ballard v. Williams, 476 S.E. 2d 783, 784 (Ga. Ct. App. 1996)), with the moving party bearing the burden of showing that there was an enforceable settlement agreement, see Francis v. Chavis, 814 S.E.2d 778, 779 (Ga. Ct. App. 2018). Specifically, viewing the evidence in the light most favorable to the nonmoving party, the party seeking to enforce the agreement "must show that the documents, affidavits, depositions, and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on whether a settlement was reached." Id. (internal quotations omitted). Accordingly, the Court will review the evidence in the light most favorable to Defendant to see if Plaintiff has met her burden of showing that an enforceable settlement agreement exists.

## DISCUSSION

"Under Georgia law, an agreement alleged to be in settlement and compromise of a pending lawsuit must meet the same requisites of formation and enforceability as any other contract." Wilkins v. Butler, 369 S.E.2d 267, 268 (Ga. Ct. App. 1988); Blum v. Morgan Guar. Tr. Co., 709 F.2d 1463, 1467 (11th Cir. 1983) ("The construction of settlement contracts is governed by state law applicable to contracts in general."). To constitute a valid contract under Georgia law, "there must be parties able to contract, a consideration moving to the contract, the assent of the

---

[2] "[T]he validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made." Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc., 133 F.3d 1405, 1409 (11th Cir. 1998).

5

parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. Moreover, consent is "essential to a contract," and there can be no binding contract "until each [party] has assented to all the terms." O.C.G.A. § 13-3-2. In order to determine whether there was mutual assent to the terms of the contract, the Court is free to consider extrinsic evidence of "the circumstances surrounding the making of the contract, such as correspondence and discussions." Frickey v. Jones, 630 S.E.2d 374, 376 (Ga. 2006). Accordingly, the Court will review the arguments and evidence raised by both parties under ordinary conceptions of contract law to determine whether Plaintiff has shown the existence of a valid settlement agreement.

**I.     Whether Plaintiff Accepted the Settlement Offer within a Reasonable Time**

Plaintiff argues that Defendant's original settlement offer, extended on May 1, 2020, was "open for acceptance on March 21, 2022," because "the offer made by . . . Haynes was never rescinded or rejected." (Doc. 60, pp. 2–3.) The Court disagrees. Where, as here, a settlement offer does not prescribe a time for acceptance, the offer must be accepted within a "reasonable time." First Acceptance Ins. Co. of Ga. v. Hughes, 826 S.E.2d 71, 77 (Ga. 2019). Accordingly, an offer not accepted within a reasonable time is deemed to have lapsed. Wilkins, 369 S.E.2d at 268 (citing Moore v. Lawrence, 15 S.E.2d 519, 521 (Ga. 1941)). Although what constitutes a reasonable time is generally a jury question, in cases "of unusual delay[,] it may become a question of law, rather than of fact." Home Ins. Co. of N.Y. v. Swann, 128 S.E. 70, 72 (Ga. Ct. App. 1925).

"What constitutes a reasonable time in any given case must depend upon its own peculiar facts." Graham v. HHC St. Simons, Inc., 746 S.E.2d 157, 161 (Ga. Ct. App. 2013). While there is no set definition as to what constitutes a "reasonable time," Georgia courts look to both the amount of time elapsed and any material circumstances that may have changed between the time

6

the offer was extended and the time of the attempted acceptance. For instance, in Wilkins v. Butler, the Georgia Court of Appeals found, as a matter of law, that the disputed settlement offer had lapsed when the plaintiff attempted to accept the offer "a full year" after it was made. 369 S.E.2d at 268; see also Home Ins. Co. v. Swann, 128 S.E. 70, 72–73 (Ga. Ct. App. 1924) (finding a six-month delay in accepting an insurance application was unreasonable); cf. Hughes, 826 S.E.2d at 77 (finding that the forty-one-day period after the offer was made was not an unreasonable time for the offer to stay open given the parties' ongoing communications). Conversely, in Graham v. HHC St. Simons, Inc., the court placed more emphasis on the surrounding circumstances and found that—despite the fact that only twenty days had passed—because the settlement offer had been extended while a motion for summary judgment was pending, the plaintiff could not reasonably accept the offer after the motion had been granted and judgment had already been entered against it. 746 S.E.2d at 161.

Here, the undisputed evidence reveals that Defendant made what it described as its "final" settlement offer to Plaintiff on May 1, 2020. (Doc 55, p. 3; doc. 58, p. 2; see doc. 55-1.) Plaintiff did not respond or further discuss settlement with Defendant until she emailed her purported acceptance almost two years later, on March 21, 2022. Twenty-two months elapsed between Defendant's May 1, 2020, offer and Plaintiff's purported acceptance, during which time Plaintiff filed this suit, Defendant hired counsel to defend it, both parties conducted discovery, and Defendant drafted and filed a motion for summary judgment (all of which caused Defendant to incur litigation expenses and attorney's fees). Notably, the purported acceptance occurred one day prior to Plaintiff's deadline for filing a response to Defendant's pending Motion for Summary Judgment and hours after Plaintiff's counsel had requested that defense counsel consent to an extension of time for Plaintiff to file the response. (Docs. 55-3, 48, 46.) Plaintiff has provided no

explanation for the almost two-year delay in acting on the settlement offer beyond saying that, during this time period, she undertook "much thoughtful deliberation," (doc. 55, p. 5), nor has she provided any case law to support a determination that this length of delay in acceptance was "reasonable," (see generally id.; doc. 60). Instead, Plaintiff's entire argument rests on the fact that she never formally rejected Defendant's offer. Unfortunately for Plaintiff, that is not the standard. Accordingly, absent any evidence to the contrary, both the time elapsed and the circumstances surrounding Plaintiff's purported acceptance require a finding that Defendant's settlement offer was not accepted within a reasonable time. Consequently, the offer is deemed to have lapsed, and the Motion to Enforce Settlement must be denied. See Wilkins, 369 S.E.2d at 268.

## II.    Whether there was Mutual Assent to the Terms of the Settlement Agreement

The Motion to Enforce additionally fails because Plaintiff has failed to show that Defendant intended to assent to the terms of the settlement agreement at the time of Plaintiff's acceptance. For a contract to be valid, there must be a "meeting of the minds" and mutual assent as to the contract's essential terms. See Graham, 746 S.E.2d at 160. Plaintiff argues that "[m]utual assent of the parties is present" because there was no prescribed period of time in the original offer and because the Status Report describes Defendant's offer as "current." (Doc. 55, pp. 5–7.) The Court disagrees. An agreement will only be valid where "the minds of the [contracting] parties meet at the same time, upon the same subject matter, and in the same sense." Wilkins, 369 S.E.2d at 268. In determining whether there was mutual assent or a meeting of the minds, "courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable [person] in the position of the other contracting party would ascribe to the first party's manifestations of assent." Cox Broad. Corp. v. Nat'l Collegiate Athletic Ass'n, 297 S.E.2d 733, 737 (Ga. 1982).

The Court finds that Defendant did not manifest an objective intent to agree to settle at the time of Plaintiff's acceptance.  The Court again finds the Georgia Court of Appeals' opinion in Graham v. HHC St. Simons, Inc., 746 S.E.2d at 160–61, instructive.  In that case, shortly after filing a motion for summary judgment, the defendant, HHC, extended a settlement offer to the plaintiff.  The plaintiff made a counteroffer, in response to which HHC reiterated its initial offer.  The plaintiff, however, did not respond again until *after* the court granted HHC's motion for summary judgment. Id.  The Georgia Court of Appeals found that no settlement agreement existed because, by the time the plaintiff sought to accept the offer (after judgment had been entered against him), the "crucial element of consideration" had changed. Id.  As the Georgia Court of Appeals explained, the consideration HHC intended to receive in exchange for its payment was the plaintiff's dismissal of the lawsuit; accordingly, when the court granted judgment in HHC's favor, thereby dismissing the suit, the intended consideration was no longer available. Id. at 160.  Thus, there was insufficient proof that the parties had "agreed on the crucial element of consideration at the same time, in the same sense." Id. at 161.

Here, Defendant only offered to settle prior to suit being filed.  (Doc. 55-1, p. 1; doc. 58-1, pp. 10, 12, 18; see doc. 46 (noting the "parties have conducted *pre-suit* [settlement] negotiations only") (emphasis added).)  When Defendant made its offers, it was responding directly to Plaintiff's letter entitled "Notice of Imminent Litigation," and, thus, the consideration Defendant would have received would have included the avoidance of the expense of litigation.  (See doc. 58-1, p. 6.)  By the time Plaintiff attempted to accept the offer, however, Defendant had hired legal counsel, participated in seventeen months of litigation, and had drafted and filed a motion for summary judgment.  Despite Plaintiff's desire to equate the consideration at time of its acceptance to the consideration that would have flowed from a pre-suit settlement, (doc. 55, p. 5), the two are

9

not the same.  Accordingly, the Court finds that "the minds of the parties did not meet at the same time and in the same sense on the essential contractual element of consideration."  Graham, 746 S.E.2d at 159.

Plaintiff cherry-picks language from the Status Report in an attempt to show that Defendant believed or intended its offer to still be open for acceptance at the time the Status Report was filed or that Defendant renewed the settlement offer through the Status Report.  (Doc. 55, pp. 5–6.)  Specifically, Plaintiff argues that, because the Status Report used the term "current" to describe the "status of settlement offers," its "plain language" shows that the offer remained open for acceptance on March 22, 2022.  (Id.)  Plaintiff's argument, however, relies exclusively on the use of this one word ("current") and requires the Court to ignore other material statements made by the parties regarding settlement.  For instance, while the Status Report does indeed state that "[t]he current status of offers is $500,000.00 from the Plaintiff and $75,000.00 from the Defendant," (doc. 38, p. 2), this statement is directly preceded by a sentence explaining that "[t]he parties have conducted *pre-suit negotiations only*," and it is directly followed by Section II.B, which states that the parties were *not* "prepared to discuss settlement of this case with the Court at [that] time," (id. (emphasis added)).  As to why the parties did not wish to discuss settlement, the Status Report plainly states that "Defendant will be filing a motion for summary judgment as to all of Plaintiff's claims and *wishes to have the motion ruled upon before discussing settlement*."  (Id. (emphasis added).)  Moreover, when prompted to provide dates for a conference with the Court, Defendant expressed its desire to not be required to send a representative with "full settlement authority," as it "wishe[d] to have its motion for summary judgment ruled upon before addressing settlement of the case."  (Id. at p. 3.)

Accordingly, viewing the Status Report as a whole, it is clear that the phrase "current status of offers" was simply meant to refer to the last offers exchanged.  See Wilkins, 369 S.E.2d at 268 ("[T]he parties' actions and correspondence do not indicate that they believed the offer to be outstanding at the time of the attempted acceptance or that they believed that an enforceable agreement had been reached at that time.").  While the meaning of the phrase "current status of offers," standing alone, could perhaps be subject to genuine dispute, the parties also explained that they had only negotiated prior to suit having been filed, and, most importantly, Defendant twice made clear that it "wishes to have its motion for summary judgment ruled upon before addressing settlement of the case."  (Id.)  There is no reading of the Status Report that would lead a reasonable person to conclude there was an open settlement offer.  The Status Report makes clear that Defendant intended to have its Motion ruled upon before again considering settlement, and, as Defendant correctly notes, "[e]nforcing a settlement under these circumstances would impose an agreement on [Defendant] which is against its express intent and understanding." (Doc. 58, p. 9.)

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Kimberly Wallace's Motion to Withdraw Notice of Settlement, (doc. 52), **DISMISSES AS MOOT** Defendant Publix Super Market, Inc.'s Motion to Strike Plaintiff's Notice of Settlement, (doc. 49), and **DENIES** Plaintiff Kimberly Wallace's Motion to Enforce Settlement, (doc. 55).

**SO ORDERED** this 25th day of October, 2022.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA